UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHESAPEAKE OPERATING, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-11-1890 |
| § | |
| SANCHEZ OIL & GAS CORPORATION, § | |
| § | |
| *Defendant*. § | |

**ORDER**

Pending before the court is plaintiffs Chesapeake Operating, Inc. and Chesapeake Louisiana, LP's (collectively, "Chesapeake") motion for partial summary judgment. Dkt. 16. Chesapeake seeks summary judgment on defendants Sanchez Oil & Gas Corporation and SEP Holdings II, LLC's (collectively, "Sanchez") affirmative defenses.[1]  *Id.*  After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART AND DENIED IN PART.

**I. BACKGROUND**

Chesapeake and Sanchez both own or owned working interests in the Guin 20-13-7 Well located in Louisiana. Dkt. 13. Chesapeake and Sanchez entered into a joint operating agreement ("JOA") on June 18, 2010, for the drilling and operation of the Guin Well. Dkt. 16 & Exh. A. Chesapeake was the Operator in charge of drilling the Guin Well and thus had "full control of all operations" at the worksite "within the limits of [the JOA]." Dkt. 16, Exh. A. Sanchez authorized

---

[1] Sanchez Oil and Gas Corporation and SEP Holdings II, LLC recently filed an unopposed motion to substitute SEP Holdings III, LLC for SEP Holdings II, LLC, which the court granted on June 7, 2012. *See* Dkts. 20, 21. The court uses the term "Sanchez" to apply to Sanchez Oil and Gas Corporation, SEP Holdings II, LLC, and SEP Holdings III, LLC, collectively.

drilling of the Guin Well and allegedly agreed to pay its proportionate share of the costs. Dkt. 13. Chesapeake alleges that Sanchez failed to pay its entire proportionate working interest share of the costs associated with drilling and completion of the Guin Well. *Id.* Chesapeake therefore filed this lawsuit on May 17, 2011, alleging that Sanchez breached the JOA and seeking contractual damages, pre- and post-judgment interest, and attorneys' fees and costs. *Id.* Sanchez filed an answer in which it asserted 12 affirmative defenses, including claims that Chesapeake's claims are barred because Chesapeake breached the JOA in several different ways, that Chesapeake caused its own damages through various negligent acts, and that Chesapeake's claims are barred by the defense of payment. Dkt. 15. Chesapeake now moves or summary judgment on these affirmative defenses, claiming that the defenses fail as a matter of law, as well as summary judgment on the issue as to whether the assignment by Sanchez Oil & Gas of its working interest in the Guin Well to SEP Holdings II, LLC relieves it of liability to Chesapeake for its working interest expenses. Dkt. 16.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if

a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id*. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment

simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

First, Sanchez has agreed to abandon its affirmative defense of payment. Dkt. 17 at 24. Chesapeake's motion, as it relates to that affirmative defense, is therefore GRANTED, and Sanchez's affirmative defense of payment is DISMISSED WITH PREJUDICE.

Second, Sanchez notes that it is not contending that the assignment of Sanchez Oil & Gas's interests in the Guin Well to SEP Holdings II, LLC relieves it of potential liability for Sanchez's working interest expenses. Dkt. 17 at 24. Thus, Chesapeake's motion, as it relates to this issue, is GRANTED. To the extent that Sanchez asserted a defense that Sanchez Oil & Gas was not liable for Sanchez's working expenses because it assigned its interest in the Guin Well to SEP Holdings II, LLC, the defense is hereby DISMISSED WITH PREJUDICE.

The remaining issues are whether Sanchez may present its affirmative defense relating to Chesapeake's alleged breach or breaches of the JOA and whether the negligence-based affirmative defenses should be dismissed. The court will first address affirmative defenses asserting breaches of the JOA. Chesapeake argues that Sanchez's breach of contract defenses are deficient, as a matter of law, because Sanchez does not allege gross negligence, and the exculpatory provision in the JOA protects Chesapeake for conduct that is a breach of the JOA. Dkt. 16. Additionally, Chesapeake argues that even if the exculpatory clause did not protect it, none of acts alleged by Sanchez in its

4

affirmative defenses constitutes a material breach. *Id.* Sanchez, on the other hand, argues that the exculpatory provision only applies when a party is seeking to hold the operator *liable* under the JOA, and that it has not asserted a counterclaim against Chesapeake seeking to hold it liable; it has merely asserted affirmative defenses. Dkt. 17. Additionally, Sanchez contends that the exculpatory provision does not apply if Chesapeake did not perform its work in a "good and workmanlike behavior." *Id.* Finally, Sanchez argues that whether the alleged breaches are material is a fact-intensive inquiry that should not be determined on summary judgment. *Id.*

Article V.A. of the JOA states:

> **Chesapeake Louisiana, L.P., by and through its agent Chesapeake Operating, Inc.** shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. *It shall conduct all such operations in a good and workmanlike manner*, but *it shall have no liability as Operator* to the other parties *for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct*.

Dkt. 16, Exh. A, art. V.A (italics emphasis added). Sanchez argues that the exculpatory portion of the clause does not apply in this case because the clause starts with "[Chesapeake] shall have no *liability*," and Sanchez is not seeking to hold Chesapeake liable and has in fact asserted no affirmative claims. While the court agrees that this clause is usually applied when a party asserts a claim or counterclaim against the Operator, here even though Sanchez has not asserted an affirmative *claim*, it essentially seeks to hold Chesapeake liable because Chesapeake will be left responsible for Sanchez's share of the operating expenses if the affirmative defenses were to be upheld. The court thus HOLDS that Sanchez cannot escape the exculpatory clause by filing affirmative defenses rather than a counterclaim.

Sanchez contends that even if the exculpatory provision could apply to affirmative defenses, it does not apply here because Chesapeake did not perform its work in a "good and workmanlike behavior."  Sanchez asserts that "Chesapeake's position that the gross negligence standard is controlling reads out the 'good and workmanlike manner' standard entirely in contravention to longstanding contract law principals that require all language of a contract to be given legal effect." Dkt. 17 at 4.  Chesapeake argues that the exculpatory clause clearly extends to all acts done under the authority of the JOA as operator.  Dkt. 18.

Under the JOA, Louisiana law applies to the contract.  Dkts. 16, 17.  However, the parties do not provide the court with any Louisiana authority relating to the interpretation of the clause at issue.  Chesapeake contends that no such authority exists and that the court must therefore make an *Erie* guess as to how Louisiana would view the provision by looking to Texas law—as applied by the Fifth Circuit in *Stine v. Marathon Oil Co.*, 976 F.2d 254 (5th Cir. 1992).  Dkt. 18.  Sanchez agrees that it is appropriate to consider Texas law when making the *Erie* guess as to what the Louisiana Supreme Court would hold, since Texas and Louisiana have similar rules with regard to contract interpretation, but it argues that (1) *Stine* does not support Chesapeake's argument; and (2) regardless, *Stine* is an outlier that is at odds with subsequent Texas appellate decisions.  Dkt. 17.

In *Stine*, R.N. Stine and Marathon Oil Company were co-owners of oil leases in Texas and entered into a JOA containing an exculpatory clause identical to the clause in this case.  *Stine*, 976 F.2d at 256, 259.  Stine alleged that Marathon breached its duties under the JOA in connection with testing and completion of the wells, among other things.  *Id.* at 257.  Marathon, like Chesapeake, asserted that it could only be held liable if Stine could show that Marathon's actions were grossly negligent or willful.  *Id.* at 258.  The Fifth Circuit was tasked with determining how far the exculpatory clause reached.  *Id.* at 260.  The Fifth Circuit held that the "tenor of the wording of the

6

exculpatory clause is that Marathon is not liable for good faith performance of 'duties under this agreement,' but is liable for acts 'outside the scope of [its] power under the agreement,'" and that Marathon was therefore "not liable for any action taken in connection with the completion, testing or turnover, of any well drilled under the provisions of the JOA unless Stine [could] prove that Marathon's actions were grossly negligent or willful" and that the protection of the exculpatory clause extended to breaches of the JOA. *Id.* at 261.

Sanchez first claims that *Stine* is not on point because it involves a claim for affirmative relief against the operator rather than an affirmative defense. For the reasons noted above, the court does not find this distinction persuasive. Sanchez next argues that *Stine* is an outlier and at odds with subsequent Texas appellate decisions that hold that an oilfield exculpatory clause should apply to tort-based claims but does not impair affirmative claims for breach of contractual covenants. The cases Sanchez relies on, *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 759 (Tex. App.—El Paso 2000, no pet.), *Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147, 155 (Tex. App.—Eastland 2001, pet. denied), *Castle Texas Production Limited Partnership v. Long Trusts*, 134 S.W.3d 267, 283 (Tex. App.—Tyler 2003, pet. denied), and *IP Petroleum Co. v. Wevanco Energy L.L.C.*, 116 S.W.3d 888, 894 (Tex. App.—Houston [1st Dist.] 2003, pet. denied), were all decided subsequent to *Stine*, but they do not distinguish *Stine*.

In *Abraxas*, the El Pasos Court of Appeals construed an exculpatory clause identical to the one at issue. 20 S.W.3d at 759. The defendant argued that the exculpatory clause did not apply to breaches of contract. *Id.* The court reasoned that the exculpatory clause was found in the portion of the contract relating to the operator's authority to conduct operations in the contract area and as such it should apply to claims that the operator failed to act as a reasonably prudent operator and not to claims for breach of the JOA. *Id.* The breach of contract claims did not allege that the operator

7

failed to act as a reasonably prudent operator. *Id.* Rather, they related to improperly sending letters to investors and the operator's administrative duties. *Id.*

In *Cone*, Cone and Fagadau Energy Corp. were parties to a JOA relating to oil and gas leases that contains the same clause as the clause at issue here. 69 S.W.3d at 151, 154-55. Fagadau Energy was the operator. *Id.* at 151. Cone did not agree to a proposal by Fagadau Energy to install a water flood and unitization, but Fagadau Energy did so anyway after obtaining approval from the Texas Railroad Commission. *Id.* Fagadau Energy sued Cone to obtain a determination as to Cone's liability for payment, as Cone argued that certain charges were improperly assessed since he did not agree to the water flood. *Id.* at 151-52. Cone asserted various counterclaims. *Id.* at 152. Fagadau Energy filed a special exception relating to its culpability for alleged violation of the JOA, arguing that it could only be liable for gross negligence or willful misconduct under the exculpatory provision of the JOA. *Id.* at 154. The trial court granted the special exception, and Cone appealed. *Id.* at 155. Cone argued on appeal that he should be able to assert liability under a simple breach of contract standard. *Id.* The appellate court held that the "gross negligence/willful misconduct requirement applies to any and all claims that the operator failed to conduct operations in a good and workmanlike manner." *Id.* Since Cone's claims related to the alleged improper assessment of costs and did not relate to how Fagadau Energy conducted operations, the Eastland Court of Appeals held that the trial court erred in striking Cone's breach of contract allegations. *Id.*

Similarly, in *Castle Texas Production*, Castle Texas Production Ltd. Partnership sought to escape liability for breach of contract by arguing that it could only be held liable for breach of the JOA, which had the same exculpatory clause as the JOA here, if it was guilty of gross negligence or willful misconduct. 134 S.W.3d at 282-83. Relying on *Abraxas*, the Tyler Court of Appeals held that the clause was "limited to claims that Castle failed to act as a reasonably prudent operator in its

8

operations in the contract area and does not apply to a claim that it otherwise breached the JOA." *Id.* at 283.

In *IP Petroleum*, the First District Court of Appeals in Houston, Texas considered a case in which the operator allegedly failed to conduct operations in a good and workmanlike manner and failed to act as a reasonably prudent operator. 116 S.W.3d at 896. The court held that the exculpatory clause in the JOA applied and that the plaintiff had to establish that the operator was grossly negligent or acted with willful misconduct when it breached the JOA in order to escape the exculpatory clause. *Id.*

Here, Sanchez asserts in its first affirmative defense that Chesapeake's claims are barred because Chesapeake breached the JOA by (a) failing to conduct its operations in a good and workmanlike manner; (b) failing to provide an Authority and Expenditure notice that complied with the terms of the Agreement; (c) failing to timely seek the advice of Sanchez and its consent to material changes in the drilling plan and associated costs related to the Guin Well; (d) failing to provide timely and fulsome information regarding the drilling and development of the Guin Well, including but not limited to daily drilling reports, well logs and analyses of the drilling operations; (e) failing to provide or disclose all necessary expenditures for the drilling or deepening and testing of the Guin Well; (f) failing to furnish well test results; and (g) failing to provide notice to Sanchez for the purposes of allowing Sanchez to elect to participate in completion costs. Dkt. 15. Chesapeake does not appear to seek summary judgment on the claim that it failed to provide notice. *See* Dkt. 16 at 6. Clearly, under either *Stine* or the Texas state court opinions relied upon by Sanchez, claim (a) is covered by the exculpatory provision because it deals with Chesapeake's alleged failure to act as a reasonably prudent operator. *Cf. Waitz v. ITR Petroleum, Inc.*, No. 87-2382, 1990 WL 120620, at *2 (E.D. La. Aug. 13, 1990) (holding that the same JOA language applied

to "beaches of the defendant's duty to properly carry out completion operations" and that the plaintiff could not "recover without proving by a preponderance of the evidence that defendant was grossly negligent"). There is no allegation that Chesapeake's alleged failure to conduct its activities in a good and workmanlike manner was grossly negligent or intentional, so the exculpatory clause applies.

The breaches alleged in sections (b)-(f) of Sanchez's first affirmative defense, however, likely would not be covered if the court were relying on Texas appellate decisions rather than *Stine*. That being said, the court could only rely on subsequent appellate decisions if "such precedent comprise[d] unanimous or near-unanimous holdings from several—preferably a majority—of the intermediate appellate courts of the state in question." *F.D.I.C. v. Abraham*, 137 F.3d 264, 268-69 (5th Cir. 1998). Here, three of the four cases discuss the types of contractual disputes at issue here and are at odds with *Stine*'s holding that breaches relating to the operator's administrative functions are covered by the clause. These cases are from three separate appellate courts in Texas. The court has been presented with no cases from Texas that are in line with *Stine*'s holding with regard to administrative contractual duties. However, there are fourteen intermediate courts of appeals in Texas, and three of them is clearly not a majority. Thus, until the Texas Supreme Court decides to take up this issue or several more intermediate appellate court agree with the *Abraxas* holding, this court must follow *Stine* when determining Texas law.

Here, the court must determine how Louisiana courts— not Texas courts—would interpret the clause. However, because the parties have presented the court with no Louisiana cases on point, they agree that the court should consider Texas law when making its *Eerie* guess with regard to Louisiana. The Fifth Circuit has interpreted the very clause at issue to apply to breaches of contract, albeit as an *Eerie* guess as to what the Texas Supreme Court would hold, and the subsequent Texas

10

decisions from intermediary appellate courts holding differently do not constitute a majority of Texas appellate courts. This court thus applies the Fifth Circuit's "guess" with regard to Texas law to Louisiana. Consequently, the exculpatory clause at issue applies to all of the breaches of the contract asserted as affirmative defenses. Sanchez has not asserted within the breach of contract affirmative defense that the alleged breaches resulted from gross negligence or willful misconduct. Accordingly, Chesapeake's motion for summary judgment on Sanchez's affirmative defense that it is not responsible for Chesapeake's claims because Chesapeake breached the JOA is GRANTED, and affirmative defense (1), sections (a) through (f) are hereby DISMISSED WITH PREJUDICE.[2]

Chesapeake also seeks summary judgment on Sanchez's negligence-based affirmative defenses contained in paragraphs 18-21 and 27 of the first amended answer. Dkt. 16 at 2-3. However, under *Stine*, claims that an operator acted outside of its operating authority are not covered by the exculpatory clause. *Stine*, 976 F.2d at 261 (holding that the "protection of the exculpatory clause extends not only to 'acts unique to the operator,' but also to any acts done under the authority of the JOA 'as Operator'" and "clearly extends to breaches of the JOA"). With the exception of the defense contained in paragraph 19, which clearly asserts that Chesapeake acted outside its operating authority, it is unclear whether the other negligence-based defenses assert that Chesapeake was acting outside its operating authority. The court finds that this issue is therefore best reserved for trial. Accordingly, Chesapeake's motion for summary judgment, to the extent it seeks summary judgment on the affirmative defenses alleged in paragraphs 18-21 and 27 of the first amended answer, is DENIED.

---

[2] The parties also argue about the materiality of the alleged breaches. However, since the court is dismissing the breach of contract affirmative defenses in light of the exculpatory clause, it need not reach the materiality issue.

## IV. CONCLUSION

Chesapeake's motion for partial summary judgment (Dkt. 16) is hereby GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to (1) Sanchez's affirmative defense of payment; (2) Sanchez's defense that Sanchez Oil & Gas cannot be liable since it assigned its interests in the Guin Well, to the extent it asserts such a defense; and (3) Sanchez's affirmative defense (1) sections (a) through (f); these defenses are hereby DISMISSED WITH PREJUDICE. Chesapeake's motion is DENIED with respect to the affirmative defenses contained in paragraphs 18-21 and 27 of the first amended answer.

It is so ORDERED.

Signed at Houston, Texas on June 12, 2012.

_____
Gray H. Miller
United States District Judge